**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **CERTUSBANK, N.A., as successor in interest to ATLANTIC SOUTHERN BANK**, | |
| Plaintiff, | |
| v. | Civil Action No. 5:14-CV-40 (HL) |
| **18 CONNECTOR ASSOCIATES, LLC, CDS DEVELOPMENT ASSOCIATES, LLC, EUGENE C. DUNWOODY, JR., JACK W. JENKINS, and DANIEL SCOTT PIPKINS,** | |
| Defendants. | |

**ORDER**

Plaintiff CertusBank N.A. ("CertusBank"), as successor in interest to Atlantic Southern Bank ("Atlantic Southern"), filed this action to recover judgment on two defaulted commercial promissory notes executed by Defendant 18 Connector Associates, LLC ("18 Connector") in favor of Atlantic Southern and to enforce the personal guaranties on those notes provided by Defendants CDS Development Associates, LLC ("CDS"), Eugene C. Dunwoody, Jr. ("Dunwoody"),[1] Jack W. Jenkins ("Jenkins"), and Daniel Scott Pipkins ("Pipkins"). The case presently is before the Court on Plaintiff's Motion for Summary Judgment. (Doc. 22). In response to Plaintiff's motion, Defendants do not dispute that they defaulted under the terms of the notes and the guaranties. However,

---

[1] On September 23, 2015, the paries filed a joint stipulation of dismissal, dismissing with prejudice all claims relating to Defendant Dunwoody. (Doc. 35).

Defendants contend that (1) the guaranties of Defendants Jenkins and Pipkins were obtained through fraudulent inducement; (2) Plaintiff has failed to establish damages with reasonable certainty; and (3) Plaintiff's calculation of the damages owed by Jenkins and Pipkins, who signed limited guaranties, is unconscionable. After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, and after conducting a brief telephone conference on September 17, 2015, the Court determines that there is no genuine dispute of the material facts and finds that Plaintiff is entitled to judgment as a matter of law.

## I.   FACTS[2]

On April 28, 2011, Ronald B. Conners, the managing member of Defendant 18 Connector, executed and delivered to Atlantic Southern two Commercial Loan Agreements and two Promissory Notes ("Note 1" and "Note 2"). Note 1 provided for a principal amount of $1,045,100.00 and was personally guaranteed by Defendants Jenkins and Pipkins. Under the guaranties, also dated April 28, 2011, Jenkins and Pipkins absolutely and unconditionally guaranteed full and prompt payment when due of all amounts owed by 18 Connector to Atlantic Southern under the loan Agreement, the note, and any and all documents, instruments, and agreements executed in connection therewith (collectively, the "Note 1 Loan Documents").

---

[2] The facts set forth herein are those stated in Plaintiff's Statement of Material Facts (Doc. 22-1) and admitted by Defendants (Doc. 29).

Note 2 was for the principal amount of $355,197.77. On April 28, 2011, Defendants CDS and Pipkins each executed a guaranty absolutely and unconditionally guaranteeing full and prompt payment when due of all amounts owed by 18 Connector to Atlantic Southern under the loan Agreement, the note, and any and all documents, instruments, and agreements executed in connection therewith (collectively, the "Note 2 Loan Documents").

Soon thereafter, CertusBank acquired the Note 1 and Note 2 Loan Documents by virtue of purchase and assignment from the Federal Deposit Insurance Corporation ("FDIC") as receiver for Atlantic Southern. The Georgia Department of Banking and Finance closed Atlantic Southern on May 20, 2011, and the FDIC was appointed as receiver for the bank. Pursuant to a May 20, 2011 Purchase and Assumption Agreement, the FDIC then sold and assigned to CertusBank all of its right, title, and interest in the relevant loan documents.

Note 1 and Note 2 matured on April 28, 2012. On August 16, 2012, counsel for CertusBank sent notice of nonpayment and demand for payment under each note to Defendants. In the demand letter, the bank furnished notice to Defendants pursuant to O.C.G.A. § 13-1-11 that the provisions of the Note 1 and Note 2 Loan Documents providing for payment of attorneys' fees would be enforced if the amount due under each Note was not paid within ten (10) days of receipt thereof.

On November 6, 2012, CertusBank conducted a foreclosure sale on the real property collateralizing the Notes. The foreclosure sale garnered a total of $222,390.00. The Superior Court of Jones County, Georgia approved and confirmed the sale pursuant to O.C.G.A. § 44-14-161 on September 12, 2013.

The bank presently claims that as of December 1, 2014, the outstanding balance owed on Note 1 is $1,043,698.02. Interest continues to accrue on Note 1 at the per diem rate of $114.27. As averred by CertusBank, the net amount due on Note 2 is $427,289.94. Interest continues to accrue on Note 2 at the per diem rate of $56.69. The outstanding principal and accrued but unpaid interest and fees are exclusive of the costs of collection and attorneys' fees available under each note.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled the judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the

4

moving party makes such a showing, the burden shifts to the non-movant, who then must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

## III.   DISCUSSION

Defendants do not contest that they signed the notes or that they are in default. However, they argue that CertusBank failed to establish the amount due under the two notes and various guaranties. Defendants Jenkins and Pipkins further contend that the guaranties they executed were obtained through the bank's fraudulent inducement. Alternatively, Jenkins and Pipkins submit that the

contractual attorney's fees provision CertusBank seeks to enforce against these two guarantors is unconscionable.

### A.    Fraudulent Inducement

Under Georgia law, "[a] creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense." City of Bremen v. Regions Bank, 274 Ga. 733, 740 (2002) (citing O.C.G.A. § 11-3-308(b)); see also Greenwald v. Columbus Bank & Trust Co., 228 Ga. App. 527, 529 (1997) (finding that once a bank establishes a prima facie right to recover on a guaranty, summary judgment is proper where the guarantor fails to establish a viable defense). A debtor is not entitled to rest on his pleadings to establish an affirmative defense; rather, the debtor is required to point to specific facts in the record in order to maintain the affirmative defense. Big Sandy P'ship, LLC v. Branch Banking & Trust Co., 313 Ga. App. 871, 872 (2012). "Only a valid affirmative defense, such as estoppel, illegality, accord and satisfaction, failure of consideration, and the like will suffice." First Citizens Bank and Trust Co., Inc. v. Hwy 81 Venture, LLC, 2012 WL 779894, at *2 (N.D. Ga. March 6, 2012).

Defendant 18 Connector admits to the execution of Note 1 and Note 2 and that it presently is in default. Defendant CDS, likewise, does not challenge its liability under the guaranty that entity provided under Note 2. CertusBank thus has made its prima facie case as to these two Defendants. Neither 18 Connector

6

nor CDS raise any affirmative defense as to their liability;[3] accordingly CertusBank is entitled to summary judgment against 18 Connector and CDS.

Defendants Jenkins and Pipkins also admit that they executed guaranties and that they now are in default, thereby making out CertusBank's prima facie case. However, Jenkins and Pipkins purport to raise the affirmative defense of fraudulent inducement. The burden now shifts to these Defendants to establish a cognizable affirmative defense.

Fraudulent inducement is established applying the same elements as a claim for fraud. Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC, 2008 WL 2967230, at *6 (M.D. Ga. July 30, 2008) (citing Johnson v. Univ. Health Servs., 161 F.3d 1334, 1341 (11th Cir. 1998) (analyzing fraudulent inducement under the fraud framework)). There are five elements of fraud under Georgia law: (1) false representation; (2) scienter; (3) intent to induce; (4) justifiable reliance; and (5) damages. Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1027 (11th Cir. 2003) (quoting Ades v. Werther, 256 Ga. App. 8 (2002)). "Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." Id.; see also Campbell v. C & S Nat'l Bank, 202 Ga. App. 639, 640 (1992) ("One not prevented from reading the

---

[3] In their Answer, Defendants collectively raised affirmative defenses for failure to state a claim, lack of standing, and lack of diversity jurisdiction. Defendants failed to assert any of these defenses in their response to Plaintiff's motion for summary judgment. Those defenses are accordingly abandoned.

contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign by promises which contradict the express terms of the contract.").

Additionally, a party pleading fraud in federal court must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which mandates that the circumstances constituting fraud be plead with particularity. Fed.R.Civ. 9(b). Rule 9(b) may be satisfied where the claim sets forth: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they misled the [defendant], and (4) what the [plaintiff] obtained as a consequence of the fraud." Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997) (internal quotation omitted).

In their response to CertusBank's motion for summary judgment, Defendants Jenkins and Pipkins assert the affirmative defense of fraudulent inducement. Notably, Jenkins failed to raise the defense of fraudulent inducement in his Answer. (Doc. 15). Generally, failure to raise an affirmative defense in a responsive pleading results in waiver of the defense. Fed.R.Civ. 8(c) (requiring a party to "affirmatively state any avoidance or affirmative defense, including . . . fraud"); see also Fed.R.Civ. 12(b) ("Every defense to a claim for

8

relief in any pleading must be asserted in the responsive pleading if one is required."). In deciding waiver issues under Rule 8(c), however, the Eleventh Circuit has granted some leeway where omission of an affirmative defense from responsive pleadings is shown not to prejudice the plaintiff. See e.g. Proctor v. Fluor Enterprises, Inc., 494 F.3d 1337, 1350-51 (11th Cir. 2007). In this case, even assuming that CertusBank in some fashion had notice of Jenkins' potential fraudulent inducement claim by virtue of Pipkins, a co-guarantor, asserting the defense, the allegations of fraud delineated in Defendants' Answer fall woefully short of meeting the stringent pleading requirements for a fraud claim.

Under the heading, "Fourth Defense," the Answer merely states, "Defendant Pipkins' guaranty was obtained through fraud in the inducement." (Doc. 15). Pipkins makes no effort at all to set forth the elements of a fraud claim, providing no information concerning the nature of the fraudulent statements, who made the statements and when, how he was misled by the statements, or what CertusBank gained as a result of the alleged fraud. In briefing the issue of fraud, Pipkins and Jenkins fare no better. Pipkins cites to interrogatory responses and deposition testimony, generally referencing unspecified representations by a bank officer at an unknown time regarding the relative value of the real property securitizing the loans and indicating that the bank would never conduct a "fire sale" and that Pipkins' only risk in the venture was loss of his cash investment. These alleged statements amount to nothing more than vague, empty promises.

9

Jenkins states that he received similar information from a co-defendant and does not claim that CertusBank, or any officer on behalf of the bank, made any form of representation to him, misleading or otherwise.

Upon determining that Defendants Jenkins and Pipkins failed adequately to plead an affirmative defense of fraudulent inducement, and concluding that there is no evidence in the record to support the contention that they were in some manner mislead into guaranteeing the underlying investment, the Court finds Jenkins' and Pipkins' defense fails as a matter of law and grants summary judgment as to liability against these two Defendants.

### B.     Amounts Owed by Defendants

Having established that summary judgment is proper against all Defendants on the matter of liability, the only remaining question before the Court is the extent of the obligation owed by each Defendant. In support of its motion for summary judgment, CertusBank offers the affidavit of Ray Persenaire, Vice President and Commercial Asset Manager for the bank. Mr. Persenaire's affidavit relies on the notes, guaranties, and loan payoff statements for Note 1 and Note 2 to establish the balance due. Defendants object to CertusBank's reliance on the affidavit, arguing that the affidavit does not establish damages with reasonable certainty and relies on inadmissible hearsay. Defendants Jenkins and Pipkins further argue that because they signed limited guaranties, the calculation of attorney's fee assessed against them by the bank is unconscionable.

10

### 1.     Admissibility of Loan Payoff Statements

Defendants question the sufficiency of CertusBank's affidavit on two accounts. First, Defendants suggest that the affidavit does not describe bank's damages with reasonable certainty and argue that the loan statements attached to the affidavit are inconsistent, or at the very least, incomplete. Second, Defendants contend that the affidavit relies on inadmissible hearsay and thus is insufficient to establish CertusBank's prima facie case.

The Court finds Defendants' first argument disingenuous. Despite Defendants' efforts to create a material issue of fact regarding the reliability of CertusBank's calculation of the outstanding principal due on Note 1 and Note 2, Defendants' own admissions regarding the validity of the notes and the signatures thereon, the fact of default, and the principal, accrued interest and fees due on each note belie this argument. (Dunwoody Dep., Doc. 24, pp. 9-11, 14-15, 17, 20-21, 23-24; Jenkins Dep., Doc. 25, pp. 7, 10-11; Pipkins Dep., Doc. 26, pp. 8-13, 15-16). Merely arguing that the amount established by a plaintiff is not correct is not sufficient; "[w]ithout introducing evidence to show that the amount claimed by plaintiff is incorrect, or should be calculated in a different way, defendants cannot avoid summary judgment." First Citizens Bank and Trust, 2012 WL 779894, at *6 (citing Dunn v. Reliable Tractor, Inc., 248 Ga. App. 258, 260 (2001); Hovendick v. Presidential Fin. Corp., 230 Ga. App. 502, 505 (1998)). Once the plaintiff sets forth a prima facie right to judgment through the

introduction of the promissory note, the burden shifts to the defendant to point to evidence that a different amount is owed, thereby creating a question of fact for a jury. Id. Defendants here have not presented any evidence to contradict the bank's calculations. In the absence of such evidence, Defendants cannot circumvent summary judgment. Id.; FDIC v. Lee, 2014 U.S. Dist. LEXIS 7514, at *9 (M.D. Ga. Jan. 22, 2014) (finding that an assertion that the FDIC did not adequately explain the computation of the amount owed on the note without providing contradictory evidence does not create a genuine factual dispute).

Defendants' argument that the Persenaire affidavit relies on inadmissible hearsay also lacks merit.  Defendants are particularly concerned about the admissibility of the loan payoff statement for each note, which provides the outstanding appraisal expenses, "Phase One" expenses, and property taxes CertusBank alleges are due. According to Defendants, the summary statements reference no supporting documents and are inadmissible to establish the amount of indebtedness.

The Court finds that the loan payoff statements are business records that may be considered under Federal Rule of Evidence 803(6). Rule 803(6) provides,

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . .
> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

      (A)    the record was made at or near the time by – or from information transmitted by – someone with knowledge;

      (B)    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

      (C)    making the record was a regular practice of that activity;

      (D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

      (E)    the opponent does not show that the source of the information or the method or circumstances or preparation indicate a lack of trustworthiness.

Fed.R.Evid. 803(6).

The Court is satisfied that there is sufficient evidence that the records referenced in the Persenaire affidavit are trustworthy and admissible to establish the amounts due under Note 1 and Note 2. Mr. Persenaire is a Vice President of CertusBank. (Doc. 22-3, ¶ 3). In that capacity, he maintains custody and control of the bank's business records. (Id., ¶ 5). Mr. Persenaire attests that the records relied upon by CertusBank to establish the amounts owed by each Defendant were made in the regular course of the bank's operation; made at or near the time of the transactions to which they refer; and were prepared by individuals with knowledge of the transactions. (Id., ¶ 54).

13

Defendants have raised no legitimate dispute about the amounts due under Note 1 and Note 2 and the guaranties. See CertusBank, N.A. v. LAH, LLC, 2013 U.S. Dist. LEXIS 109386, *9 (M.D. Ga. Aug. 5, 2013). Accordingly, the Court concludes that CertusBank is entitled to summary judgment.

The record before the Court establishes as a matter of law that Defendants are jointly and individually liable as follows:

**Note 1**

As of December 1, 2014, Defendant 18 Connector owed $1,043,698.02, which includes outstanding principal, expenses, and interest up until that date. Interest continues to accrue at a per diem rate of $114.27, which totals $34,281.00 as of the date of this order.[4] 18 Connector thus owes a total of $1,077,293.40 under Note 1.

The amount of principal owed by Defendants Jenkins[5] and Pipkins is capped by the guaranties they signed at $78,188.00. However, the guarantors remain liable for the interest accumulated on the full amount of the note,[6] or $201,287.05, for a total of $279,475.05 per person.

---

[4] Interest for 300 days (December 2, 2014 through September 28, 2015) at $114.27 per day.

[5] In its motion for summary judgment, CertusBank calculates Jenkins' liability to include interest and attorney's fees for both Note 1 and Note 2. However, Jenkins only guarantied Note 1, and the Court has calculated Jenkins liability accordingly.

[6] In the course of their response to CertusBank's motion for summary judgment, Defendants Jenkins and Pipkins stated that it was their intention in agreeing to a limited guaranty that not only would the amount of principal for which they are

**Note 2**

Under Note 2, as of December 1, 2014, Defendants 18 Connector and CDS[7] owed $ 427,289.96, including outstanding principal, expenses, and interest up until that date. Interest continues to accrue at a per diem rate of $56.69, totaling $17,007.00 as of the date of this order. [8] These Defendants thus owe a total of $444,296.96 under Note 2.

Defendant Pipkins' guaranty limits his liability as to the outstanding principal at $27,372.00. Pipkins totally liability on Note 2, including accrued interest, is $113,523.32.

### 2.    Attorney's Fees

CertusBank is also entitled to the collection of attorney's fees pursuant to O.C.G.A. § 13-1-11.[9] Under § 13-1-11(a)(1),

---

responsible in the event of default be capped but also that the calculation of interest and attorney's fees would be calculated based on the on the cap and not on the full value of the note. (Doc. 30, p. 9). However, during the September 17, 2015 telephone conference, Defendants conceded that under the terms of the guaranty, they are liable for interest and fees on the full amount of the debt. They now contend only that the assessment of attorney's fees is unconscionable and do not contest the calculation of interest.

[7] CertusBank asserts in its motion that CDS is liable under both Note 1 and Note 2. CDS's guaranty only pertains to Note 2. Therefore, the Court has calculated CDS's liability based on the Note 2 figures alone.

[8] Interest for 300 days (December 2, 2014 through September 28, 2015) at $56.69 per day.

[9] The current version of O.C.G.A. § 13-1-11 applies to contracts entered into on or after July 1, 2011. 2012 Georgia Laws Act 725 (S.B. 181). Because the notes and guaranties here at issue were executed prior to July 1, 2011, the former version of the statute applies.

> If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness.

The notes here allow for the recovery of attorney's fees calculated at 15 percent of the principle and outstanding interest. (Doc. 1-2, p. 4; Doc. 1-8, p. 4). The Court accordingly finds that Defendants owe $161,696.85 (15 percent of $1,077,979.02) in attorney's fees on Note 1 and $66,644.54 (15 percent of $444,296.96) on Note 2.

### 3.    Unconscionability of Attorney's Fees as to Guarantors

The final argument propounded by Defendants Jenkins and Pipkins is that the amount of attorney's fees sought by CertusBank is unconscionable. Jenkins and Pipkins both signed limited guaranties, establishing a cap on any principal liability. According to Defendants, requiring Jenkins and Pipkins to pay attorney's fees in excess of 250 percent of the amount guaranteed is unconscionable and should be held unenforceable.

The basic test for determining unconscionability is "whether, in light of the general commercial background and commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of making the contract." NEC Tech., Inc. v, Nelson, 478 Ga. 390, 391 (1996) (internal quotation and citation omitted).

"Georgia's unconscionability doctrine contemplates both procedural unconscionability, which 'addresses the process of making the contract,' and substantive unconscionability, which 'looks to the contractual terms themselves.'" Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1124 (11th Cir. 2010) (quoting NEC Tech., 267 Ga. at 391). Procedural unconscionability takes into consideration "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice." Id. (internal citation omitted). The substantive element focuses "on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns. Id.

Defendants argue that the attorney's fees are unconscionable based solely on the disparity between the amount of the principal secured by the guaranty and the calculation of attorney's fees on the principal of the underlying note. Jenkins, who signed a guaranty limiting his principal liability to $78,188.00, additionally owes $161,696.85 in attorney's fees. Pipkins is liable for the same amount under Note 1. Having also guarantied Note 2 for the principal amount of $27,372.00, Pipkins owes an additional $66,644.54 in attorney's fees.

The Court first observes that Defendants are sophisticated parties with investment experience. (Pipkins Dep., Doc. 26, p. 8). Jenkins is an attorney with

over 18 years of legal experience. (Jenkins Dep., Doc. 25, p. 4). While his practice may not include commercial litigation, Jenkins certainly has the education and capacity to read, understand, and negotiate a contract. (Id., p. 25). Pipkins is similarly well-situated in terms of his education and experience to comprehend the risks associated with a high-dollar investment. He is a structural engineer with a PhD from Georgia Tech and 22 years of professional experience. (Pipkins Dep., Doc. 26, p. 6).

The guaranty in question contains the following contractual term:

> My liability will not exceed $78,188.00 of the principal amount outstanding at default, plus accrued interest, attorney's fees and collection costs, when allowed by law, and all other costs and expenses agreed to be paid under all agreements evidencing the Debt.

(Doc. 1-5, p. 2).[10] As previously noted, Jenkins and Pipkins have conceded that this provision obligates them to pay the capped amount of principal along with interest and attorney's fees computed based on the entirety of the underlying notes. The language itself is not particularly complicated or unusual, and Defendants have not suggested that the term is ambiguous. Had the guarantors wished to modify the terms of the guaranties to limit the payment of accrued interest and attorney's fees strictly to the cap, they certainly could have done so. But they did not, and they are now on the hook to pay fees on a note for more

---

[10] This language is cited from the Jenkins guaranty. The two guaranties signed by Pipkins contain identical provisions, with different dollar amount appearing for the guaranty associate with Note 2.

than $1 million in the case of Jenkins, and more than $1.5 million in the case of Pipkins, who guaranteed both Note 1 and Note 2. Based on their requisite level of education and experience Defendants were aware, or should have been aware, of the risks involved and their potential financial exposure based on the full principal amount of the notes in question. Under the circumstances, the Court finds the attorney's fees commercially reasonable and determines that CertusBank is entitled to summary judgment according to the terms of the various contracts.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Summary Judgment. (Doc. 22). The Clerk of Court is directed to enter judgment in favor of Plaintiff against each Defendant jointly and individually as follows:

1.    **18 Connector Associates, LLC**: $1,077,979.02 (principal and interest as of September 28, 2015) plus $161,696.85 in attorney's fees for Note 1; $444,296.96 (principal and interest as of September 28, 2015) plus $66,644.54 in attorney's fees for Note 2.

2.    **CDS Development Associates, LLC**: $444,296.96 (principal and interest as of September 28, 2015) plus $66,644.54 in attorney's fees for Note 2.

3.    **Jack W. Jenkins**: $279,475.05 (principal and interest as of September 28, 2015) plus $161,696.85 in attorney's fees for Note 1.

4.     **Daniel Scott Pipkins**: $279,475.05 (principal and interest as of September 28, 2015) plus $161,696.85 in attorney's fees for Note 1; $113,523.32 (principal and interest as of September 28, 2015) plus $66,644.54 in attorney's fees for Note 2.

**SO ORDERED**, this 28th day of September, 2015.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

aks